## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF KANSAS

THE EVANGELICAL LUTHERAN
GOOD SAMARITAN SOCIETY, INC.,
et al.,

          **Plaintiffs,**

v.

MICHAEL RANDOL, in his official
capacity as the Director of the Kansas
Department of Health and Environment,

          **Defendant.**

Case No. 16-CV-2665-DDC-GEB

### MEMORANDUM AND ORDER

The plaintiffs in this case include skilled nursing home facilities headquartered in South Dakota and 21 of its patients.[1]  The Evangelical Lutheran Good Samaritan Society ("Good Samaritan") operates facilities in Kansas and provides 24-hour skilled nursing care to its patients, including the 21 plaintiff patients named in this case.  This matter is before the court today on defendant Kansas Department of Health and Environment's ("KDHE") Motion to Dismiss (Doc. 8) and plaintiffs' two Motions to Amend Complaint (Docs. 19, 24).  For reasons explained below, the court grants defendant's Motion and denies plaintiffs' motions.

### I.      Background

"Medicaid is a program administered cooperatively by states and the federal government to provide 'health care to persons who cannot afford such care.'"  *Morris v. Okla. Dep't of Human Servs.*, 685 F.3d 925, 928 (10th Cir. 2012) (quoting *Brown v. Day*, 555 F.3d 882, 885

---

[1]    Plaintiffs identify 21 patient plaintiffs in its Complaint.  Plaintiffs also haved filed motions seeking leave to file two proposed amended complaints.  Doc. 19-1, Doc. 24-1.  The proposed First Amended Complaint removes two plaintiffs who either withdrew their Medicaid application or whose applications recently were granted.  *See* Docs. 18, 19-1.  The proposed Second Amended Complaint identifies a total 21 plaintiffs.  *See* Doc. 24-1.

(10th Cir. 2009)).  States "choosing to participate receive federal funds for state-administered Medicaid services provided they comply with the requirements of the Medicaid Act."  *Lewis v. N.M. Dep't of Health*, 261 F.3d 970, 974 (10th Cir. 2001).  The requirements for the Medicaid Act are found in 42 U.S.C. § 1396 *et seq.*, and its implementing regulations, 42 C.F.R. §§ 430 *et seq. Id.*  Subsection (c)(3)(ii) of § 435.912 provides that the state agency may not take more than 45 days to determine the eligibility of Medicaid applicants who apply on any basis other than a disability.

Each of the patient plaintiffs were admitted to a Good Samaritan facility in Kansas between 2011 and 2016.  Each patient plaintiff requires 24-hour skilled nursing care, and each one applied for Medicaid in Kansas on non-disability bases.  As of November 21, 2016, defendant had approved Medicaid benefits for 10 patient plaintiffs, defendant had denied Medicaid benefits for eight patient plaintiffs, and two cases were still pending.  Doc. 10-1 at 12.[2] One denial, separate from the eight noted above, resulted in an administrative appeal that was later withdrawn by the applicant's authorized representative.  *Id.*

Plaintiffs assert that defendant failed to make a Medicaid eligibility determination within 45 days for each of the patient plaintiffs' applications and thus did not comply with federal regulation § 435.912(c)(3)(ii).  Plaintiffs assert defendants violated the Americans with Disabilities Act ("ADA") by denying benefits to the patient plaintiffs and unfairly discriminated against plaintiffs on the basis of their disabilities.  And, plaintiffs assert that defendant violated their Fourteenth Amendment due process and equal protection rights.  Plaintiffs seek the following relief: "Issuing an Order requiring the defendant [to] automatically approv[e] the

---

[2]        Defendant's Opposition to plaintiffs' first Motion to Amend asserts that none of the patient plaintiffs' applications remained pending as of January 23, 2017.  Doc. 22 at 2.  Plaintiffs' second proposed Amended Complaint identifies four new putative plaintiffs who are not listed in the Complaint or First Amended Complaint. *See* Doc. 24; *see also* Doc. 25 at 2.  Defendant's Opposition to plaintiffs' second Motion to Amend asserts that three of the new patient plaintiffs' applications have been determined, and that it cannot locate information on the fourth. Doc. 26 at 3.

plaintiffs' Medicaid benefits" (Doc. 1 at 17); (2) "take other such actions as are proper and necessary to remedy the defendant's violations and order such equitable relief as will make Plaintiffs whole for Defendant's unlawful conduct." *Id.*

Defendant moves to dismiss the case under Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), and 12(b)(6). Defendant contends the court lacks subject matter jurisdiction over the case, and defendant contends the court's personal jurisdiction over the case is "questionable." Defendant also contends that even if subject matter and personal jurisdiction exist, plaintiffs have not stated a claim upon which relief may be granted.

Plaintiffs first asked the court for leave to amend the Complaint on January 9, 2017. Doc. 19. Plaintiffs asked for leave again on May 25, 2017, before the court had ruled the first Motion to Amend. Doc. 24. In both motions, plaintiffs complied with D. Kan. Rule 15.1 and attached their proposed amended complaint to their motion. Defendant opposes plaintiffs' motions and asserts that granting plaintiffs leave to amend their Complaint would be futile. Docs. 22, 26.

## II.    Analysis

Plaintiffs' Complaint purports to assert four causes of action, but the court condenses their claims into two causes of action for two reasons. First, Count I of the Complaint seeks "declaratory judgment relief" that defendants violated 42 C.F.R. § 435.912(c)(3) when it failed to determine the patient plaintiffs' Medicaid eligibility within 45 days of receiving their application. Plaintiffs bring this claim under 28 U.S.C. § 2201 and Federal Rule of Civil Procedure 57. But § 2201 and Rule 57 do not supply "an independent source of federal jurisdiction." *Schilling v. Rogers*, 363 U.S. 666, 677 (1960); *see also* Fed. R. Civ. P. 57 (explaining that Rule 57 governs the procedure for obtaining a declaratory judgment under §

2201). The "availability of such [declaratory judgment] relief presupposes the existence of a judicially remediable right." *Id.* Count I thus does not state an independent cause of action. Second, Count IV of plaintiffs' Complaint demands "temporary and permanent injunctive relief." Doc. 1 at 16. But Count IV similarly fails to state an independent cause of action. Count IV is best characterized as plaintiffs' prayer for relief. So, this Order and the court's analysis focus on Counts II and III and whether the claims they assert can survive defendant's Motion to Dismiss.

Ordinarily, the court first would address defendant's jurisdictional arguments under Rules 12(b)(1) and 12(b)(2). *See Arbaugh v. Y & H Corp.*, 546 U.S. 500, 506 (2006) ("Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action."); *see also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) ("The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum" that lacks personal jurisdiction over him). But defendant's jurisdictional arguments in its Motion to Dismiss read more like arguments under 12(b)(6). *See* Doc. 10-1 at 16–17 (asserting that plaintiffs have failed to assert facts necessary to support their ADA and Fourteenth Amendment Claims). So, the court first determines whether plaintiffs have stated claims upon which relief can be granted and then addresses any remaining jurisdictional concerns.

### A. Legal Standard: Motion to Dismiss

Federal Rule of Civil Procedure 8(a)(2) provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Although this Rule "does not require 'detailed factual allegations,'" it demands more than "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'"

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "Under this standard, 'the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims.'" *Carter v. United States*, 667 F. Supp. 2d 1259, 1262 (D. Kan. 2009) (quoting *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007)).

On a motion to dismiss under Rule 12(b)(6)—like this one—the court assumes that a complaint's factual allegations are true, but need not accept mere legal conclusions as true. *Id.* at 1263. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are not enough to state a claim for relief. *Iqbal*, 556 U.S. at 678. In addition to the complaint's factual allegations, the court also may consider "attached exhibits and documents incorporated into the complaint by reference." *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009) (citations omitted).

### 1. Count II: Americans with Disabilities Act

Plaintiffs allege defendant violated 42 U.S.C § 12132, the ADA. Section 12132 provides: "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. To state a claim under the ADA, a plaintiff must allege: "(1) that he is a qualified individual with a

disability; (2) that he was 'either excluded from participation in or denied the benefits of some entity's services, programs, or activities, [ . . .]' and (3) 'that such exclusion, denial of benefits, or discrimination was by reason' of his disability.'" *Villa v. D.O.C. Dep't of Corrections*, 664 F. App'x 731, 734 (10th Cir. 2016) (quoting *J.V. v. Albuquerque Pub. Sch.*, 813 F.3d 1289, 1295 (10th Cir. 2016)).

Plaintiffs have not stated a viable ADA claim. They assert that all "of the plaintiffs are 'qualified individuals with a disability.'" Doc. 1 at 14. And, plaintiffs describe each plaintiff's disability with some specificity. Doc. 1 at 3–7. But plaintiffs have not asserted that they were denied benefits *because* of their disability, a required element of an ADA claim. *See Villa*, 664 F. App'x at 734 (holding that plaintiff had not alleged facts sufficient to support a claim under the ADA merely by asserting that there was "discrimination against [him] because of [his] disabilities," but otherwise failing to elaborate on this "conclusory statement"). Plaintiffs merely assert that that they are disabled and that defendant did not provide them the benefits that they are entitled to receive under federal law. Doc. 1 at 12–14. By failing to assert facts to support the third element of an ADA claim, plaintiffs have failed to state a claim for which relief can be granted under that Act. The court thus grants defendant's Motion to Dismiss for plaintiffs' ADA claim.

## 2.  Count III:  § 1983 Claim

Plaintiffs bring their next claim under 42 U.S.C. § 1983. This provision "provides a remedy only for the deprivation of 'rights, privileges, or immunities secured by the Constitution and laws' of the United States." *Gonzaga Univ. v. Doe*, 536 U.S. 273, 283 (2002). Plaintiffs assert that defendant violated their Fourteenth Amendment Due Process and Equal Protection rights when it did not timely determine their eligibility for Medicaid. Doc. 1 at 15. U.S. Const.

Amend. XIV provides:  "No State shall . . . deprive any person of life, liberty, or property, without due process of law" or "deny to any person within its jurisdiction the equal protection of the laws."

Plaintiffs assert that defendant's acts "were committed under color of state law."  Doc. 1 at 15.  And indeed, it is a "prerequisite to any relief under section 1983" that "the defendant has acted under color of state law."  *Nagy v. Spence*, 172 F. App'x 847, 848 (10th Cir. 2006).  But plaintiffs have failed to plead any facts to support a claim for relief under § 1983 for Fourteenth Amendment violations.  The court explains why below.

### a.  Due Process Claims

Plaintiffs title Count III of their Complaint "Violation of Due Process and Equal Protection."  Doc. 1 at 15.  But nowhere in Count III do plaintiffs allege facts that support or refer to due process violations.  *See* Doc. 1 at 15 (asserting that the equal protection doctrine ensures that all similarly situated people are treated equally under the law and asserting that defendant committed the alleged acts under the color of state law, but failing to mention the due process clause).  This deficiency alone justifies dismissal of plaintiffs' due process claims for failure to state a claim.  *See* Fed. R. Civ. P. 8(a)(2) ("A pleading that states a claim for relief must contain" a "short and plain statement of the claim showing that the pleader is entitled to relief.").  And plaintiffs' due process claims suffer from more deficiencies.

The Fourteenth Amendment's due process clause provides two types of constitutional protections:  procedural due process rights and substantive due process rights.  *Hennigh v. City of Shawnee*, 155 F.3d 1249, 1253 (10th Cir. 1998).  Procedural due process "ensures that a state will not deprive a person of life, liberty or property unless fair procedures are used in making that decision."  *Id.*  Substantive due process "guarantees that the state will not deprive a person"

7

of certain rights "no matter how fair the procedures are" used to make the decision. *Id.* The Complaint hardly addresses the due process clause, and plaintiffs never specify which due process theory they mean to invoke.

Substantive due process "extends protections" only to "fundamental rights." *Petrella v. Brownback*, 787 F.3d 1242, 1261 (10th Cir. 2015). "To qualify as 'fundamental,' a right must be objectively, deeply rooted in this Nation's history and tradition." *Id.* Plaintiffs' Complaint does not identify any fundamental right they were deprived from receiving. The Complaint thus fails to state a substantive due process claim upon which relief can be granted.

The Complaint also fails to allege a procedural due process violation. The Tenth Circuit uses a two-step inquiry to determine whether an individual's procedural due process rights were violated. *Camuglia v. The City of Albuquerque*, 448 F.3d 1214, 1219 (10th Cir. 2006). First, it asks, "[d]id the individual possess a protected property interest to which due process protection was applicable?" *Id.* Second, "[w]as the individual afforded an appropriate level of process?" *Id.* Here, plaintiffs' Complaint falls short on both steps.

First, plaintiffs' Complaint never identifies the specific life, liberty, or property interest that the defendant took from them. Plaintiffs ask the court for an order requiring that defendant "automatically approv[e] the plaintiffs' Medicaid benefits." Doc. 1 at 17. So, the court understands that the Complaint asserts a property interest in Medicaid benefits. But not all plaintiffs have a property interest in Medicaid benefits. Indeed, only some of the patient plaintiffs who applied for benefits were deemed eligible. Plaintiffs may hope, or even believe that all of the patient plaintiffs are entitled to Medicaid benefits, but belief does not amount to a constitutionally protected property interest. *See Geriatrics, Inc. v. Harris*, 640 F.2d 262, 264 (10th Cir. 1981) (holding that a Colorado nursing home lack a protectable property interest in

continued Medicaid certification; the court held that a "unilateral hope" cannot constitute a protected property interest that requires a pre-termination hearing); *see also Johnson v. Guhl*, 91 F. Supp. 2d 754, 772 (D.N.J. 2000) (holding that plaintiffs who had never been granted Medicaid benefits did not have a protected property interest in those benefits); *Hamby v. Neel*, 368 F.3d 549, 556 (6th Cir. 2004) (finding that plaintiffs have property interests in Medicaid benefits only if they meet the program's requirements).

Second, and even if all of the plaintiffs possessed a constitutionally protected property interest in Medicaid benefits, none of the plaintiffs have identified any constitutionally protected process that defendant allegedly took from them. Plaintiffs each had the opportunity to apply for Medicaid. Indeed, the state has processed all of the patient plaintiffs' applications—some were deemed eligible, others were not. Even those plaintiffs whose eligibility was denied had the opportunity to request a hearing on the denial. *See* 42 C.F.R. § 431.220(a)(1) ("The State agency must grant an opportunity for a hearing . . . [to] [a]ny individual who requests it because he or she believes the agency has taken an action erroneously, denied his or her claim for eligibility or for covered benefits or services . . . ."). Plaintiffs realize they had this right to a procedure allowing them to contest any wrongful eligibility determination. Indeed, they identify this process in their Complaint. Doc. 1 at 9. In sum, plaintiffs have not asserted facts capable of supporting a claim that defendant denied them a constitutionally protected process. This failure means their due process claim does not state a cognizable claim.

### b. Equal Protection

Plaintiffs' Complaint also fails to state an actionable equal protection claim. An equal protection claim requires a "threshold allegation that the plaintiff was treated differently from similarly situated individuals." *Watson v. Williams*, 329 F. App'x 193, 196 (10th Cir. 2009).

Plaintiffs' Complaint asserts the following:  "[The] [e]qual protection doctrine ensures that all similarly situated persons are treated similarly under the law.  If a statute classifies people, the classification must be based on criteria related to the statute's objective."  Doc. 1 at 15 (quoting *Disabled Am. Veterans v. U.S. Dep't of Veterans Affairs*, 962 F.2d 136, 141 (2d Cir. 1992)).  These legal principles frame the problem for plaintiffs' Complaint here:  it never asserts that they were treated differently than anyone else, or that a federal statute classified them improperly.  Without more, plaintiffs' Complaint does not state an equal protection claim.

 In sum, plaintiffs have failed to state a claim for which relief can be granted under § 1983 and the Fourteenth Amendment.  The court thus grants defendant's Motion to Dismiss for plaintiffs' § 1983 claims.

### B.  Motions to Amend

Plaintiffs have moved twice for leave to amend their Complaint.  Docs. 19, 24.  The court rules both motions now, and denies them for reasons explained in parts 1 and 2 of this section.  The analysis begins with the standard that governs these motions.

Rule 15 governs Motions to Amend in civil cases.  Rule 15(a)(2) provides:  "a party may amend its pleading only with the opposing party's written consent or the court's leave.  The court should freely give leave when justice so requires."  Fed. R. Civ. P. 15(a)(2).  The decision whether to grant leave to amend is within the court's discretion.  *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 330 (1971); *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1204 (10th Cir. 2006).  "Refusing leave to amend is generally only justified upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment."  *Frank v. U.S. W., Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993) (citations omitted).  "A proposed amendment is futile if

the complaint, as amended, would be subject to dismissal for any reason . . . ." *Watson ex rel. Watson v. Beckel*, 242 F.3d 1237, 1239–40 (10th Cir. 2001) (citations omitted).

The court denies plaintiffs' motions to amend because the proposed amendments would assert theories that are futile. That is, plaintiffs' proposed amended complaints largely resemble their first Complaint. Most notably, plaintiffs' first proposed amended complaint adds a cause of action against Dr. Susan Mosier, in her official capacity as the secretary of KDHE. Doc. 19-1. Additionally, plaintiffs' first proposed amended complaint replaces its request for a declaratory judgment in Count I with a claim that defendants violated 42 C.F.R. 435.912(c)(3) by failing to process their applications timely. *Id.* Also, their first proposed amended complaint would add a claim that defendants violated section 504 of the Rehabilitation Act. *Id.* And plaintiffs add a request for "retroactive payments" to their prayers for relief. *Id.* Finally, their second proposed amended complaint identifies new plaintiffs. Doc. 24-1. But, neither proposed amended complaint states any claims upon which relief can be granted.

### 1. Plaintiffs' 42 C.F.R. 435.912(c)(3) and Section 504 Claims

Plaintiffs' proposed amended complaints would add two new claims to the case. They allege that defendant violated 42 C.F.R. 435.912(c)(3) and section 504 of the Rehabilitation Act. But neither theory is legally viable.

Plaintiffs assert that defendant violated 42 C.F.R. § 435.912(c)(3) because it did not timely determine the patient plaintiffs' eligibility for Medicaid. But, plaintiffs have not shown that 42 C.F.R. § 435.912(c)(3) creates an individual right enforceable through a private cause of action. Section 435.912(c)(3) outlines the timeliness and performance standards for state Medicaid agencies, but it never confers a legal right or remedy for private individuals if state agencies fail to comply with these standards.

As explained earlier in this order, § 1983 provides a remedy for deprivation of "rights, privileges, or immunities secured by the Constitution and laws of the United States." *Gonzaga*, 536 U.S. at 283 (internal quotation marks omitted).  But, the Medicaid Act was enacted by Congress under its spending power.  *M.A.C. v. Betit*, 284 F. Supp. 2d 1298, 1305 (D. Utah 2003).  "In legislation enacted pursuant to the spending power, the typical remedy for state noncompliance" is not a private cause of action but an "action by the Federal Government to terminate funds to the State."  *Gonzaga*, 536 U.S. at 280 (quoting *Pennhurst State Sch. and Hosp. v. Halderman*, 451 U.S. 1, 28 (1981)).  The Supreme Court has held that unless Congress speaks "with a clear voice" and "manifests an 'unambiguous' intent to confer individual rights," spending clause statutes "provide no basis for private enforcement" under § 1983.  *Id.* at 280 (quoting *Pennhurst*, 451 U.S. at 17, 28).

Plaintiffs rely on an Eleventh Circuit case, *Doe 1– 13 By and Through Doe, Sr. 1–13 v. Chiles*,[3] to support their position that the patient plaintiffs' rights were violated when defendant failed to determine their Medicaid eligibility in a timely fashion.  Doc. 1 at 12–13.  In *Doe*, the plaintiffs were disabled individuals who had been deemed Medicaid eligible and placed on a waiting list for admission into intermediate care facilities ("ICF's").  *Doe*, 136 F.3d at 711.  The Eleventh Circuit held that the Florida Department of Health and Rehabilitative Services violated 42 U.S.C. § 1396a(a)(8) by failing to provide the plaintiffs their Medicaid benefits—or placement at the ICFs—with reasonable promptness.  *Id.*  In so holding, the Eleventh Circuit recognized that § 1396a(a)(8) created a private right of action in reasonable prompt Medicaid assistance.  *Id.*

---

[3]        136 F.3d 709 (11th Cir. 1998).

But the facts in *Doe* differ substantially from the facts governing this motion.  First, plaintiffs bring this case under 42 C.F.R. 435.912(c)(3)—not § 1396a(a)(8) like the *Doe 1–13* plaintiffs.  Second, several of the plaintiffs here have been deemed ineligible to receive Medicaid benefits at all.  And, the plaintiffs who were deemed eligible never allege that they were denied reasonably prompt Medicaid assistance.  These plaintiffs allege that defendant failed to make determinations about their eligibility within the 45 days required by the implementing regulations.  Unlike the plaintiffs in *Doe 1–13*, these plaintiffs have received and continue to receive Medicaid benefits to cover the costs of their healthcare services.

The Tenth Circuit has not addressed whether Medicaid's implementing regulations, 42 C.F.R. §§ 430 *et seq.*, create a privately enforceable right under 42 U.S.C. § 1983.  But Judge Crow in our district previously has considered whether the Medicaid statute, 42 U.S.C. § 1396a(a)(8), creates a private cause of action.  He held that it does not.  *See Sanders ex rel. Rayl v. Kansas Dept. of Soc. and Rehab. Servs.*, 317 F. Supp. 2d 1233, 1249–51(D. Kan. 2004) ("This language creates a duty of the State to furnish 'medical assistance' with reasonable promptness, but does not contain the explicit rights-creating language described in *Gonzaga*") (quoting *M.A.C. v. Betit*, 284 F. Supp. 2d 1298, 1306 (D. Utah 2003))).

The analysis adopted in *Rayl* applies equally to the regulation at issue here.  Like § 1396a(a)(8), § 435.912(c)(3) lacks rights-creating language.  *See* 42 C.F.R. § 435.912(c) (outlining the timeliness and performance standards with which the state agency must comply without manifesting a clear and unambiguous intent to confer an individually enforceable right).  Plaintiffs have cited no authority for the proposition that § 435.912(c)(3) creates a private right of action.  And so, the court concludes that the Tenth Circuit, if presented with this issue, would conclude that Congress did not intend for this implementing regulation to create an individual

right enforceable through a private cause of action.  Plaintiffs thus have not stated a claim for relief under § 435.912(c)(3).

Likewise, plaintiffs fail to state a claim for relief under Section 504 of the Rehabilitation Act.  "Section 504 of the Rehabilitation Act provides that 'no otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.'"  *Cohon ex rel. Bass v. N.M. Dep't of Health*, 646 F.3d 717, 725 (10th Cir. 2011) (quoting 29 U.S.C. § 794(a)).  A prima facie case under Section 504 requires a plaintiff to claim:  (1) he is a handicapped individual, (2) he is otherwise qualified for the benefit sought, (3) he was discriminated against because of his handicap, and (4) the activity in question receives federal financial assistance.  *Id.* (quoting *Johnson by Johnson v. Thompson*, 971 F.2d 1487, 1492 (10th Cir. 1992)).

Plaintiffs assert no facts capable of supporting a prima facie case under § 504.  Their proposed amended complaints contend that defendant's failure to process plaintiffs' applications promptly constitutes unlawful discrimination under the ADA and Section 504.  Doc. 19-1 at 12; Doc. 24-1 at 10.  And plaintiffs assert the theory that defendant's practices and policies favor similarly situated applicants who do not possess disabilities.  *Id.*  But plaintiffs never assert any facts to support their legal theory.  Indeed, their proposed amended complaints are plagued by the same deficiency as their original Complaint—they allege no facts supporting their broad conclusion that they were discriminated against *because* of their disability or handicap.  This is insufficient to state a claim upon which relief can be granted.  *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory

statements" are not enough to state a claim for relief). Plaintiffs have not stated a claim for relief under § 504 of the Rehabilitation Act.

Because both of plaintiffs' proposed amended complaints would be subject to dismissal under Rule 12(b)(6), their proposed amendments are futile. The court thus denies plaintiffs' motions to amend their Complaint to assert unsupportable legal theories.

## 2. Jurisdictional Concerns

Even if plaintiffs' proposed amended complaints could cure the claim defects in their original Complaint, jurisdictional concerns persist. Plaintiffs' claims are likely barred by the Eleventh Amendment to our Constitution. The "court may raise the issue of Eleventh-Amendment immunity sua sponte but, unlike subject-matter jurisdiction, it is not obligated to do so." *United States ex rel. Burblaw v. Orenduff*, 548 F.3d 931, 941 (10th Cir. 2008) (quoting *Wis. Dep't of Corr. v. Schact*, 524 U.S. 381, 289 (1998)). The court addresses the Eleventh-Amendment immunity issue, below.

Plaintiffs' Complaint and proposed amended complaints bring claims against state officials in their official capacities. The Supreme Court has made it clear: "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). "As such, it is no different from a suit against the state itself." *Id.* The Eleventh Amendment provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54 (1996) (quoting U.S. Const. Amend. IV). And, the Supreme Court "has consistently held that an

unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another state." *Edelman v. Jordan*, 415 U.S. 651, 662–63 (1974).

The "landmark case of *Ex Parte Young*,[4] created an exception to this general principle." *Green v. Mansour*, 474 U.S. 64, 68 (1985). In *Ex Parte Young*, the Supreme Court held that "a suit challenging the constitutionality of a state official's action in enforcing state law is not one against the State." *Id.* (quoting *Young*, 209 U.S. at 159–160). The Court also held that the Eleventh Amendment "does not prevent federal courts from granting prospective injunctive relief to prevent a continuing violation of federal law." *Id.* (quoting *Young*, 209 U.S. at 155–56). In other words, the Eleventh Amendment does not bar suits against state officials in their official capacities that seek prospective injunctive relief. But the Supreme Court has "refused to extend the reasoning of *Young*, however, to claims for retrospective relief." *Id.* at 68; *see also Edelman*, 415 U.S. at 668, 678 (holding that a retroactive award of benefits under a federal-state program was a "form of compensation to those whose applications were processed on the slower time schedule" and thus barred by the Eleventh Amendment).

Here, plaintiffs allege that defendants, acting in their official capacities, violated 42 C.F.R. § 435.912(c)(3) when they failed to make eligibility determinations about plaintiffs' Medicaid applications within 45 days. In their proposed amended complaints, plaintiffs seek an order which requires defendants, in part, to make "retroactive corrective payments to plaintiffs." Doc. 19-1 at 15; Doc. 24-1 at 12. These retroactive payments would amount to compensation for the plaintiffs who allegedly were required to wait longer than 45 days for eligibility determinations. This is not the type of prospective injunctive relief permitted by *Ex Parte*

---

[4]    209 U.S. 123 (1908).

*Young*.[5]  An action for monetary relief against the state, without consent, is barred by the Eleventh Amendment.  The Eleventh Amendment would not permit plaintiffs' claims to proceed in this federal court.

The court cannot envision facts that would permit plaintiffs to proceed with their claims for retroactive payment based on the *Ex Parte Young* exception.  If plaintiffs can allege facts that might permit them to proceed within the boundaries imposed by the Eleventh Amendment immunity, they certainly can file that case.  But neither their Complaint nor their proposed amendments have asserted such facts.  Plaintiffs, who are represented by able counsel, have failed three times to produce a complaint that states a claim upon which relief can be granted. The court thus denies plaintiffs' motions to amend.

### III.    Conclusion

In sum, even if plaintiffs' complaints stated claims on which relief could be granted, important constitutional questions prevent the court from exercising jurisdiction over the case. The court thus grants defendant's Motion to Dismiss (Doc. 10) and denies plaintiffs' Motions to Amend (Doc. 19, 24).

---

[5]      As discussed above, plaintiffs' Complaint and proposed amended complaints rely on *Doe 1–13*, 136 F.3d at 718, for the position that private individuals may bring a § 1983 claim against state officials for failure to furnish Medicaid assistance within the timeline outlined by §1396a(a)(8).  *See* Doc. 24-1 at 9.  Notably, the *Doe* plaintiffs sought prospective injunctive relief, and the Eleventh Circuit thus concluded that their claims were not barred by the Eleventh-Amendment immunity.  *Doe 1–13*, 136 F.3d at 719–23.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant KDHE's

Motion to Dismiss (Doc. 10) is granted.

**IT IS FURTHER ORDERED THAT** plaintiffs' Good Samaritan, et al., Motions for

Leave to Amend Complaint (Docs. 19, 24) are denied.

**IT IS SO ORDERED.**

**Dated this 20th day of July, 2017, at Topeka, Kansas.**

**s/ Daniel D. Crabtree**
**Daniel D. Crabtree**
**United States District Judge**
